1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LIONS ASSOCIATES, LLC                )
                                     )
            Plaintiff,               )   Civil No. 10-189
                                     )
      VS.                            )   May 13, 2010
                                     )
SWIFTSHIPS SHIPBUILDERS, LLC         )
                                     )
            Defendant.               )
_____ )


REPORTER'S TRANSCRIPT

MOTIONS HEARING


BEFORE:      THE HONORABLE GERALD BRUCE LEE
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

 FOR THE PLAINTIFF:  VENABLE LLP
                     BY: J. DOUGLAS BALDRIDGE, ESQ.
                         LAUREN D. EADE, ESQ.
 FOR THE DEFENDANT:  THE NUBANI LAW FIRM
                     BY: ASHRAF NUBANI, ESQ.
                         FAISAL GILL, ESQ.
                     THE HMA LAW FIRM
                     BY: HASSAN M. AHMAD, ESQ.

                     ---

OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
                         U.S. District Court
                         401 Courthouse Square
                         Alexandria, VA  22314
                         (703)501-1580

<u>INDEX</u>

ARGUMENT BY THE PLAINTIFF     13

ARGUMENT BY THE DEFENDANT      4,   20

RULING BY THE COURT           22

---

```
 1                    (Thereupon, the following was heard in open
 2      court at 11:19 a.m.)
 3                    THE CLERK:  1:10 civil 189, Lions Associate,
 4      LLC versus Swiftships Shipbuilders, LLC.
 5                    Would counsel please note your appearances
 6      for the record.
 7                    MR. BALDRIDGE:  Good morning, Your Honor.
 8      Doug Baldridge from Venable on behalf of plaintiff.
 9                    With me today is Lauren Eade also from
10      Venable and Admiral Lyons.
11                    THE COURT:  Good morning.
12                    MR. NUBANI:  Good morning, Judge Lee.
13      Ashraf Nubani, local counsel for Swiftships --
14                    THE COURT:  Good morning, Mr. Nubani.
15                    MR. NUBANI:  -- Shipbuilders.  I have with
16      me, Hassan Ahmad who will be doing the argument and
17      Faisal Gill from Swiftships.
18                    THE COURT:  Good morning.
19                    I am ready when you are, counsel.
20                    If you all would when you come to the podium
21      announce your names for the court reporter that would be
22      helpful.  Thank you, sir.
23                    MR. AHMAD:  Good morning, Your Honor.
24      Hassan Ahmad, A-H-M-A-D on behalf of -- pro hac vice
25      counsel for Swiftships Shipbuilders, LLC.
```

1                    THE COURT:  Good morning.

2                    MR. AHMAD:  Why we're here.  The issue here

3     today, Your Honor, the plaintiff has to plead plausibly

4     not just possibly but the plaintiff has to plead

5     plausibly.

6                    The relief sought in this case is not

7     plausible when the contract is void on public policy

8     grounds.

9                    And it is a waste of judicial resources and

10    of this Court's time to go through an entire, you know,

11    discovery process and a protracted trial when this Court

12    has all the information it needs to dispose of this case

13    today.

14                   Even if it does consider matters that are

15    technically outside of the pleadings under Rule 12(d),

16    this Court, as it is well aware, can treat this as a

17    summary judgment motion and consider that -- and

18    consider those materials.

19                   And so we would ask the Court to consider

20    Exhibit 6 to our second motion to dismiss which is page

21    105 of the Iraqi Navy contract.  It bars relief.

22                   The plaintiff can produce no set of facts

23    entitling it to relief because contingent fees are

24    barred unless agreed to in advance by the government of

25    Iraq.  And the government of Iraq has not agreed to it.

1     Therefore contingent fees are completely barred.

2                    Even if the government of Iraq had agreed to

3     it, the statutory cap -- I'm sorry, the cap on the

4     contingent fees would have been $50,000.

5                    So, of course, the next question is -- the

6     next question is that the plaintiff is trying to say

7     that it's not bound by the terms of the Iraq and Navy

8     contract because that contract is between Swiftships and

9     the United States government.

10                    Unfortunately, that argument doesn't have

11    any merit.  Under the *Quinn* Court's ruling which was

12    cited extensively in the briefs by the parties, it is

13    against public policy to allow a third party agent to

14    collect on a contract that is illegal and void on public

15    policy grounds.  Privity of contract is irrelevant.

16                    But the real meat of the plaintiff's

17    complaint here hinges on a plausibility analysis, and

18    that's why --

19                    THE COURT:  And let's focus on that just for

20    a second here.

21                    MR. AHMAD:  Sure.

22                    THE COURT:  The issue of contingency fee, if

23    any and I've read the FAR regulation 48 CFR 52.203-5(a).

24    Is that the clause that you say would bar contingent

25    fees in a government contract like this one?

1          MR. AHMAD:  That is one of the provisions of

2     law, yes, Your Honor, that generally states as a matter

3     of policy that contingent fees are against public policy

4     unless certain narrow exceptions are met.  And tying us

5     into a whole plausibility issue which is, of course, why

6     we're here on a 12(b)(6) motion, we're not asking this

7     Court, we're not asking Your Honor to engage in a

8     full-fledge factual analysis.  We understand, of course,

9     that would be inappropriate at the 12(b)(6) stage.

10    We're not asking you, Your Honor, to engage in a factual

11    analysis even though the plaintiff keeps trying to say

12    that's what we're doing.

13          In any 12(b)(6) analysis, as the Court is

14    well aware, the Court has to make a determination on

15    plausibility.  And again, I repeat, plaintiff has to

16    plead plausible.

17          THE COURT:  And plausibility means a factual

18    showing that the defendant may be liable to the

19    plaintiff.

20          MR. AHMAD:  Right.  Is it likely based on

21    the complaint that the plaintiff is entitled to relief.

22          THE COURT:  It doesn't mean you -- it

23    doesn't mean the plaintiff wins.  It means the plaintiff

24    has set forth sufficient facts to give the defendant

25    notice of the assertion of the common law statutory

1    claim.  Is that right?

2              MR. AHMAD:  I believe so, Your Honor.  I

3    think there's a distinction between possible in which

4    case I guess if you had to assign sort of a numerical

5    score to it, even a possible score might be even one

6    percent that the plaintiff is entitled to relief.

7              But it's not quite as high as probably which

8    would be, I guess, 51 percent.  It's probable somewhere

9    in between.  It has to be plausible, that we have to

10   understand exactly what the notice of the -- of the

11   issues are.

12             THE COURT:  So, as I understand your

13   argument it is basically, Judge, you have the contract

14   between Lions and Swiftships and all you need to do is

15   read that contract and you'll see built in a contingency

16   clause which is barred by the FAR and the Iraqi

17   contract.  That it?

18             MR. AHMAD:  That's part of it, Your Honor,

19   but the complaint itself -- if I may just -- just a

20   couple of other points I wanted to bring to the Court's

21   attention.

22             The complaint itself clearly brings up

23   contingent fees in the government contract.  There's a

24   government contract that's pled to, the Iraqi Navy

25   contract or Tier contract actually, and there is this

1    three percentage clause that says that the plaintiff is

2    entitled to three percent of the relief.

3              So clearly the complaint itself brings up

4    the issue of contingent fees in the government contract.

5    The briefs -- we're to inform the Court about contingent

6    fees in government contracts and the public policy

7    concerns, and we would argue especially here in the

8    Fourth Circuit.

9              In a sort of normal or run-of-the-mill

10   breach of contract action, it might be sufficient for

11   the plaintiff to plead what it did or an unjust

12   enrichment action.  But in this case, what we're asking

13   the Court to do is to take judicial notice that

14   contingent fees are generally against public policy

15   unless certain exceptions are met.

16             THE COURT:  Well, let's say I agree with

17   that.  Let's say I agree with that.  That is the law.

18             MR. AHMAD:  Sure.

19             THE COURT:  Now the FAR does say except a

20   bona fide employer or agency.  Is it your view I can

21   make that judgment by just looking at the complaint and

22   the contract?

23             MR. AHMAD:  Yes, Your Honor, because if the

24   plaintiff must plead plausibly, not possibly, but

25   plausibly.  Then the complaint doesn't make any mention

1   of the factors of the plaintiff being a bona fide agent.

2   It doesn't say anything about how well he understands,

3   for example, the business of the defendants, Swiftships.

4   It doesn't say how to perform the contract.  It doesn't

5   say what he even did in general terms to bring quote

6   unquote "bring" the Iraqi Navy contract to the

7   defendant, Swiftships.

8           So given these gaping holes, given these

9   deficiencies in pleading, I would ask this Court to ask

10   itself this question.  How is a complaint like that

11   plausible?  How it is plausible when the general rule is

12   that contingent fees in government contracts are void as

13   a matter of public policy.

14           THE COURT:  I want to ask you another

15   question.

16           MR. AHMAD:  Sure.

17           THE COURT:  And you all heard me ask this

18   question early so you knew it was coming.

19           And we all had civil procedure.  And I tell

20   pro se plaintiffs all the time that lawyers spend a

21   whole year in law school studying how to bring a case in

22   the federal court.  So it's not an easy matter to

23   undertake.

24           I realize that *Ashcroft versus Iqbal* has

25   been viewed by the commentators and the courts as a sea

```
 1    change in the requirements of pleading.
 2            My question to you is whether in a breach of
 3    contract case, and that's all this is to me, a plaintiff
 4    is required to set forth in detail every single
 5    statement, every single witness statement, every single
 6    theory concerning liability and to set forth in great
 7    detail the bona fides of agency with respect to the
 8    exception.
 9            MR. AHMAD:  Your Honor, the answer -- our
10    position of course is no.  You don't need to have a 200
11    or 300 or 400 paragraph complaint that states in detail,
12    anticipates every single potential defense.  No, that's
13    not necessary.
14            What I'm asking this Court to do is to ask
15    its -- is to make a judgment call and realize that --
16    let me put it this way, Your Honor.  Would this Court
17    allow a plaintiff to sue the United States government
18    without a showing that that plaintiff adhered to the
19    Federal Tort Claims Act?  Or would this Court allow a
20    plaintiff to sue for defamation without showing it was
21    prima facie eligible under the Communications Decency
22    Act of 1996?  Or for that matter, would this Court allow
23    a plaintiff to sue an employer for violation of the
24    Family Medical Lead Act without pleading that he was an
25    eligible employee?
```

1          All of these cases, the Court would be

2   entitled to consider the fact that there are certain --

3   for each individual case and in this case, it's not just

4   a regular breach of contract case because there is an

5   overarching, very strong, very well documented public

6   policy that says that contingent fees in government

7   contracts are void as a matter of public policy.

8          THE COURT:  Well, gaming contracts are void.

9   There are many types of contract -- contract to commit

10  murder is against public policy.

11         So your view is that in order to state a

12  claim for breach of contract, a plaintiff must set forth

13  that their claim for breach of contract involves a

14  lawful activity and they must plead that the

15  illegalities I just referred to, gaming, contract for

16  murder, contract to sell a child, that that is not a

17  part of the contract?

18         MR. AHMAD:  Well, if it becomes an issue.

19  If it --

20         THE COURT:  Well when does it become -- it

21  doesn't become an issue until the defendant respond; is

22  that right?

23         MR. AHMAD:  No, it becomes an issue when the

24  plaintiff pleads.  Again, it's the plaintiff that is

25  bringing up the issue of contingent fees in a government

1    contract.

2              The four corners of the complaint allege

3    that.  And that's where it comes from.  So if the

4    plaintiff is going to bring up this issue of a

5    contingent fee in a government contract and there is an

6    overarching public policy -- overarching public policy

7    against government fees in -- contingent fees in

8    government contracts, then it behooves the plaintiff to

9    plead that away.

10             I'm just saying in this --

11             THE COURT:  Do you agree because you just

12   stated a moment ago that there are five elements that

13   the Court has to consider under the *Quinn* case if I

14   agree that that Second Circuit case applies here or the

15   *Puma* case that I'd have to determine about the bona

16   fides of the agency.  You agree that that is not a legal

17   question.  That is a factual question, is it not?

18             MR. AHMAD:  I agree that that would be a

19   factual question, but that's not what we're asking this

20   Court to do.

21             THE COURT:  No, you're saying that they have

22   to plead those five elements in order to state a claim.

23             MR. AHMAD:  They have to plead something.

24   It has to be a plausible form of relief.  Again we're

25   not trying to say that the plaintiff has to put on its

1    entire case and to plead every single last element and

2    anticipate every single last defense, no.

3              But where there is an overarching public

4    policy -- where there is an overarching public policy in

5    which the only way the plaintiff can actually gain any

6    sort of relief or be awarded any sort of relief is to

7    show that he is a bona fide agent, no, he doesn't have

8    to prove in the complaint that he is bona fide agency.

9    But he at least has to put in something, something in

10   the complaint, something in the declarations afterward

11   to allow this Court to say, well, you know, it's

12   possible that he is.

13             THE COURT:  All right.

14             MR. AHMAD:  It's plausible that he is.

15             THE COURT:  I have asked you the questions

16   that I have.  What I'd like to do now is to hear from

17   the other side and I'll give you a chance to respond.

18             MR. AHMAD:  Thank you, Your Honor.

19             THE COURT:  Thank you.

20             MR. BALDRIDGE:  Thank you, Your Honor.  For

21   the reporter, Doug Baldridge, B-A-L-D-R-I-D-G-E on

22   behalf of Lions.

23             Your Honor, if you just look at the *Enomoto*

24   case by Judge Cacheris or the *Dodge* case by Judge

25   Trenga, both post-*Twombly*, you see that we very easily

```
 1   made all the allegations necessary to state a plausible

 2   claim for relief for breach of contract.

 3             Now, what makes this case different is then

 4   we get to this bar on contingency fees --

 5             THE COURT:  Well, what do you have to allege

 6   to allege a claim for breach of contract?

 7             MR. BALDRIDGE:  Well, you allege the

 8   existence of a contract which I can point you to the

 9   allegations.  You allege that that contract was breached

10   which I can point you to the allegations in the

11   complaint.  You can -- you can allege that performance

12   occurred on behalf of the plaintiff, which I can point

13   you to the allegations of the complaint and you allege

14   damages.

15             THE COURT:  Causation and damages, right?

16             MR. BALDRIDGE:  Causation and damages and

17   it's all right there in the complaint and it's all very

18   carefully outlined in our briefs, and I don't think

19   there's any question that those have been met.

20             THE COURT:  Well, help me with your response

21   to plaintiff counsel's argument about plausibility.

22   First tell me what you think plausibility means and then

23   second tell me what facts are required to demonstrate

24   plausibility.

25             MR. BALDRIDGE:  Well, coming out of *Twombly*
```

1    and *Ashcroft*, we do have kind of a confused state of the

2    law.  It came out of a large antitrust case and there

3    was a lot more to it than a simple breach of

4    contract liability --

5            THE COURT:  Well, *Bell Atlantic versus*

6    *Twombly* was antitrust, but *Ashcroft versus Iqbal* was

7    a --

8            MR. BALDRIDGE:  Took it on to the next

9    level.  And I think you said it absolutely right in the

10   prior hearing, Your Honor, that plausible meant facts

11   sufficient to show that the defendant may be liable to

12   the plaintiff.

13           There is no doubt that there are facts

14   alleged in this complaint that show that this defendant

15   may be liable to my client.  We allege the contract.  We

16   attached the contract.  We state that he was entitled to

17   this three percent fee.  We state that they failed to

18   pay that fee.  We state that Admiral Lyons on behalf of

19   the entity fully performed in getting this company

20   reclassified to Tier 1 and persuaded the government on

21   the merits and capabilities, very key, said it right in

22   the complaint, the merits and capabilities that

23   Swiftships was the better choice for the United States

24   government, and we allege damages in a set amount.

25           THE COURT:  Are you required to demonstrate

1   the nonexistence of some deficiency like illegality?

2   Are you required to?

3            MR. BALDRIDGE:  Of course not.  You can't

4   plead away every affirmative defense.  And the way the

5   CFR works here is as a general statement that contingent

6   fees except under certain circumstances are not going to

7   be enforced.

8            We claim and will claim that it will be

9   pursued through discovery and probably by affirmative

10  defense that our client is a bona fide commercial agent.

11           To decide whether our client is a bona fide

12  commercial agent before you even get to the five

13  factors, you got to ask yourself did he assert or

14  improper influence to insure the award of this contract?

15           There is no possible way that we had to

16  plead away improper influence in order to state a claim,

17  and there's no possible way to decide through

18  application of the five human factors or additional

19  factors whether or not improper influence was exerted

20  here on a motion to dismiss.

21           You've got to get to the facts to decide

22  whether this company is a bona fide commercial agent and

23  that's the issue here.

24           We don't have to plead that away.  It's an

25  affirmative defense.  It's long established.

1           Do I have to plead in a patent case that my

2   client didn't engage in inequitable conduct?  No.  But,

3   inequitable conduct is a bar to a patent case.  That's

4   an affirmative defense that's raised.  You have a

5   response.  You take discovery and you see what happens.

6           You don't plead away the murder contract as

7   you said in the breach of contract action.  These are

8   all affirmative defenses.

9           THE COURT:  Well, the agreement is before

10   the Court and, in your view, you set forth the elements

11   of a breach of contract claim.  I'm trying to decide if

12   there's more that is required because of *Ashcroft versus*

13   *Iqbal* or *Bell Atlantic versus Twombly* to state a claim

14   for breach of contract.

15           MR. BALDRIDGE:  Let's take the *Enomoto* case

16   with Judge Cacheris on this bench post-Twombly.  Judge

17   Cacheris said under *Twombly* a 12(b)(6) motion has to be

18   denied even though the plaintiff in that case did not

19   allege the terms, the existence or even attached the

20   contract to the complaint in a breach of contract

21   action.  He said you've said enough just simply by

22   saying here's the contract and here's how the other

23   party breached it.

24           We've said how they breached it.  They

25   didn't pay us the money they owed us under the contract

1  attached to the complaint.  It is -- it is -- *Ashcroft*

2  and *Twombly* did not add a requirement that you plead

3  away every possible obstacle to your case.

4         What they say and stand for the proposition

5  if, Judge, you see facts and you say at this point

6  looking at the four corners of the complaint, do I see

7  enough facts to say this defendant may be liable to

8  plaintiff?  And if the answer to that is yes, you've got

9  to deny the 12(b)(6).  And --

10         THE COURT:  What I have here is a seven page

11  complaint with four pages of exhibit, so eleven page

12  complaint for the breach of contract claim, not 50 pages

13  with 300 paragraphs, not 60 pages with 500 paragraphs.

14         I think I've asked you the questions that I

15  have.

16         MR. BALDRIDGE:  I'll just comment that

17  *Twombly* was probably had to be a 100 page complaint,

18  antitrust --

19         THE COURT:  But antitrust is a whole

20  different ball game.  It's kind of securities fraud.

21  You can't come in here with a securities fraud case and

22  say they defraud me.  You've got to -- there's a whole

23  standard concerning statutory claims which plaintiff's

24  counsel brought up and that's a distinction I asked you

25  to address whether when you're dealing with Federal Tort

1   Claims Act or even employment discrimination, there are

2   certain statutory requirements that have to be pled in

3   order to state a claim.

4          And is your claim here one that there are

5   any prerequisites other than what you've pled?

6          MR. BALDRIDGE:  I'm sorry.  Are there --

7          THE COURT:  Are there any other prerequisite

8   pleading or statutory required to plead a claim for

9   breach of contract like in Tort Claims Act you have to

10   show you filed a claim within a certain number of days?

11          MR. BALDRIDGE:  And there are not, Your

12   Honor, and that's why the defendant cannot cite a single

13   case deciding this on a 12(b)(6) basis, deciding the

14   same issue because it doesn't occur on a 12(b)(6) basis.

15          If you take *Quinn*, for example, jury trial

16   on the merits.  If you take any of these other cases,

17   the facts are flushed out as to whether somebody is a

18   bona fide commercial agent and then the Court decides.

19   You can't do it on 12(b)(6).

20          And furthermore as a general matter, I don't

21   know how you can file 12(b)(6) with three declarations,

22   the Iraqi Navy contract to which we're not a party

23   asking the Court to consider one page of the 200 pages

24   of that, a brief that repeatedly refers to the lack of

25   proof in evidence.  That's not what 12(b)(6) is about.

```
 1    That's why there are no 12(b)(6) cases supporting their

 2    position.

 3                THE COURT:  Thank you very much.

 4                MR. BALDRIDGE:  Thank you.

 5                THE COURT:  Mr. Ahmad, I'll give you a

 6    chance to respond.

 7                MR. AHMAD:  Very briefly, Your Honor.  Thank

 8    you.

 9                THE COURT:  Thank you.

10                MR. AHMAD:  Very briefly, Your Honor, we're

11    not saying that a plaintiff has to plead away all the

12    possible defenses.  We're just saying where there is an

13    overarching as you mentioned statutory requirement in a

14    particular breach of contract and it has to be on a

15    case-by-case basis, where there is overarching public

16    policy as we have here that the plaintiff has a slightly

17    higher burden after *Ashcroft*, after *Bell Atlantic versus*

18    *Twombly* to plead away and show -- he has to at least

19    say -- he has to at least say that he's a bona fide

20    agent.

21                He doesn't do that anywhere in the

22    complaint, anywhere in his declarations.  Nowhere does

23    he say that he's a bona fide agent.  And he needs that

24    in order to show and in order to make any sort of

25    plausible claim for relief.
```

1              Counsel referred to the cases of *Enomoto*

2    *versus Space Adventures* and the CD -- *Dodge versus CDW*

3    case.   *Enomoto*, again, we had a 250-paragraph complaint.

4    In *Dodge* it was also a very detailed amended complaint

5    that stated exactly how the aggrieved plaintiff there

6    who was a saleswoman was -- was supposed to perform

7    under the contract to get the commission that she was

8    trying to earn.

9              We're talking about plausibility.   Bona fide

10   agency has to be pleaded.

11             And the other issue that was brought up was

12   the issue of improper influence.   I just want to state

13   also that improper influence is not something that

14   has -- is required to be pled here.   You can have an

15   agency that is not bona fide that did not engage in

16   improper influence.

17             In other words, an agency does not become

18   not bona fide only because -- only because it engages in

19   improper influence.   Improper influence is something

20   that will void a contingency fee, you know, across the

21   board.   It will be a permanent bar, you know, to that

22   agency being considered bona fide, yes.   But you can

23   still have an agency that is not bona fide that did not,

24   you know, engage in improper influence.

25             THE COURT:   All right.

1          MR. AHMAD:  And the very last thing I want

2   to say, Your Honor, counsel said there was no case that

3   was decided at the 12(b)(6) stage.  I direct your

4   attention to *Bradley*.  It was 12(b)(6) and that's all I

5   wanted to say, Your Honor.

6          THE COURT:  Thank you.  You're right,

7   *Bradley* was decided on 12(b)(6).

8          Let the record reflect this matter is before

9   the Court on the defendant's motion to dismiss the

10  complaint under 12(b)(6).  The parties have briefed the

11  matter, and the issues presented are fairly narrowly

12  focused.

13         First is whether the plaintiff sufficiently

14  set forth the elements of a breach of contract claim

15  where there is this contingency fee clause and whether

16  the plaintiff has pled the elements of unjust enrichment

17  under Count II.  And the third I guess perhaps the most

18  critical issue that we've spent most of our time

19  discussing today is whether the agreement as set forth

20  is void on public policy grounds because three percent

21  clause is a contingency fee.  I think everybody says

22  that it is -- is prohibited under the Federal

23  Acquisition Regulation that I've referred to during oral

24  argument, and it's 48 CFR 52.203-5(a), 52.203-5(a) which

25  does set forth a -- described as a covenant against

1  contingent fees and a warranty that the contractor makes

2  that says, quote, "the contractor warrants that no

3  person or agency has been employed or retained to

4  solicit or obtain this contract upon an agreement or

5  understanding for a contingent fee except a bona fide

6  employer or agency".

7         I am persuaded that *Bell Atlantic versus*

8  *Iqbal -- Bell Atlantic versus Twombly* and *Iqbal* have

9  heightened the requirements that are necessary to set

10 forth a claim generally.

11        I will not debate what is required.  I can

12 only make judgments individually in each case and look

13 at the four corners of the complaint, accepting the

14 factual assertions as true, disregarding the conclusions

15 of law and ascertain whether the plaintiff has set forth

16 a plausible claim which means that the plaintiff sets

17 forth a claim that demonstrates the defendant may be

18 liable to the plaintiff.

19        As it relates to the breach of contract and

20 unjust enrichment claim, the Court is going to deny the

21 motion because I'm of the opinion that the seven page

22 complaint sufficiently sets forth a claim for breach of

23 contract and for unjust enrichment.

24        As to whether or not the complaint

25 sufficiently sets forth a claim that would traverse the

1    legal impediments to a contract that is contingent and

2    prohibited by the FAR, it seems to me that we agree that

3    the *Puma Industries,* that's P-U-M-A Industries

4    Consulting case and the *Quinn*, Q-U-I-N-N case from the

5    Second Circuit have set forth several factors the Court

6    generally considers.  And I don't see a Fourth Circuit

7    case here that tells me what to consider, so I'm going

8    to go with the Second Circuit standard.  And I think

9    plaintiff's counsel has directed to the five factors

10   that must be evaluated which include, one, whether the

11   fees are excessive compared to those typically allowed

12   for similar services; second, whether the agency has

13   adequate knowledge of the contractor's products or

14   services; third, whether there has been continuity in a

15   relationship between the agency and contractor; four,

16   whether the agency is an established concern; and five,

17   whether the arrangement is confined to only obtaining

18   government contracts.

19          I am not going to make a judgment about

20   these factors on a motion to dismiss because I think

21   that they require a factual determination of the sum and

22   substance of the claim that the plaintiff is a bona fide

23   employer or agency.

24          I realize that there are cases that make

25   this judgment, but they are typically done after a trial

1    or on summary judgment.

2             So, to be clear, I'm going to deny the

3    motion to dismiss the complaint under 12(b)(6).

4             The arguments have been interesting.  The

5    briefs have been well written, and I thank you for your

6    preparation.

7             MR. BALDRIDGE:  Thank you, Your Honor.

8             MR. AHMAD:  Thank you, Your Honor.

9             THE COURT:  Thank you.  We're in recess.

10            (Proceeding concluded at 11:47 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3           I, Renecia Wilson, an official court

 4    reporter for the United State District Court of

 5    Virginia, Alexandria Division, do hereby certify that I

 6    reported by machine shorthand, in my official capacity,

 7    the proceedings had upon the motions in the case of

 8    Lions Associates vs. Swiftships Shipbuilders.

 9           I further certify that I was authorized and

10    did report by stenotype the proceedings and evidence in

11    said motions, and that the foregoing pages, numbered 1

12    to 25, inclusive, constitute the official transcript of

13    said proceedings as taken from my shorthand notes.

14           IN WITNESS WHEREOF, I have hereto

15    subscribed my name this   13th    day of   May  , 2010.

16

17                         _____/s/_____
                                 Renecia Wilson, RMR, CRR
18                               Official Court Reporter

19

20

21

22

23

24

25
```

RENECIA A. SMITH-WILSON, RMR, CRR