IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **LION ASSOCIATES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. : 1:10-CV-189 (GBL/TRJ) |
| ) | |
| **SWIFTSHIPS SHIPBUILDERS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPLY IN SUPPORT OF DEFENDANT SWIFTSHIPS SHIPBUILDERS, LLC'S MOTION FOR SUMMARY JUDGMENT

Defendant Swiftships Shipbuilders LLC ("Swiftships") hereby submits this Reply in support of its Motion for Summary Judgment against Lion Associates, LLC ("Lion") on the following grounds:

- Swiftships is entitled to summary judgment on Lion's breach of contract claim (Count 1) because Lion fails to offer any basis for the Court to find that the 3% contingency clause was ambiguous as the plain and ordinary meaning of the terms in this clause only triggered a contingency payment if Lion "brought" and "obtained" a "new contract" for Swiftships.

- Swiftships is entitled to summary judgment on Lion's unjust enrichment claim (Count 2) because Lion failed to establish any basis to claim that Lion's work on the Iraqi Navy Contract was outside the scope of the Lion/Swiftships Agreement.

Based on the unambiguous terms of the Swiftships/Lion Agreement, the undisputed facts and the guiding principles of law and procedure set forth in this Reply and the papers submitted in support of Swiftships' Motion for Summary Judgment, Swiftships respectfully requests that the Court grant its motion and dismiss Lion's Complaint in its entirety.

1

5125162

**ARGUMENT**

I. **Lion Fails to Provide Any Reasonable Basis to Dispute the Plain Meaning of the 3% Contingency Clause or to Claim that this Clause is Ambiguous**

Nowhere in its Opposition does Lion dispute that the Court must interpret the meaning of the Lion/Swiftships Agreement by giving its terms their plain and ordinary meaning. Nor has Lion raised a genuine dispute as to the plain meaning of the words used in the Agreement. Rather, Lion argues that this Court should not grant summary judgment because the language in the 3% contingency clause is ambiguous. Opp. at 3.

Whether language in a contract is ambiguous is a question of law. *Pyramid Dev., LLC v. D&J Assoc.*, 553 S.E. 2d 725, 728 (Va. 2001). "A contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement." *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986) (internal citations omitted). In its Opposition, Lion merely "disagrees" with the plain meaning of the 3% contingency clause, but Lion fails to identify any tangible ground for claiming the agreement is ambiguous.

As the Virginia Supreme Court has held, for a contract clause to be deemed ambiguous, that clause must be capable of "being understood in more than one way or refer[] to two or more things simultaneously … or is difficult to comprehend, is of doubtful import or lacks clearness and definitiveness, the indispensible elements of ambiguous language." *Stuarts Draft Shopping Cntr., L.P. v. S-D Associates*, 468 S.E.2d 885, 887 (Va. 1996) (internal citations and quotations omitted). None of these tangible elements required to find an ambiguity are present here as the 3% contingency clause simply states**:** "Consultant will be paid 3% of each new contract brought to Swift[ships], which was obtained by L[ion]." Unlike the instances when a contract is found to be ambiguous, the 3% contingency clause is clear, definitive, and not capable of differing interpretations.

The *Atalla* case (*Atalla v. Abdul-Baki*, 976 F.2d 189, 192 (4th Cir. 1992)) cited by Lion (Opp.[1] p. 3) underscores the difference between an ambiguous contract provision(s) and the 3% contingency clause at issue before the Court.  In *Atalla*, the court had to consider whether language in a release and settlement agreement unambiguously expressed the intent of the parties to resolve all claims between the parties.  Critical to the finding that the release and settlement document was ambiguous and did not resolve all claims, the Fourth Circuit found that there were two separate provisions in the agreement that conflicted:  one paragraph contained an all-encompassing release clause (¶ 10), while another paragraph (¶ 5) permitted contribution claims.  *Id.* at 192-93.  Reading these two paragraphs in conjunction with each other and other provisions of the agreement, the Court found ambiguity as to the parties' intent concerning what claims were released, and what claims could survive and be submitted to arbitration.  *Id.* at 194-95.

Here, there is no other paragraph in the Lion/Swiftships Agreement that relates to Swiftships' responsibility for contingency payments to Lion.  As a result, Lion is simply contesting the meaning of a single clause in and of itself, and straining to ascribe to that clause a self-serving meaning despite express terms which provide otherwise.  As noted above, merely disagreeing as to what a particular clause means does not make the clause ambiguous.  *See also Stuarts Draft Shopping Cntr., L.P.*, 468 S.E.2d at 888-89 ("However, mere disagreement about the meaning of otherwise unambiguous language does not make it ambiguous.").  Significantly, when a contract on its face is unambiguous, it is inappropriate to resort to extrinsic evidence to attempt to further interpret the agreement.  *Virginia Electric and Power Co. v. Northern Virginia Regional Park Auth.*, 618 S.E.2d 323, 326-27 (Va. 2005).  Thus, the Court need not and should

---

[1] "Opp." refers to Plaintiff Lion's Opposition to Swiftships' Motion for Summary Judgment.

5125162

not consider Lion's purported extrinsic evidence attached to its Opposition in determining the meaning of the words used in the 3% contingency clause.[2]

Most importantly, the plain and ordinary meaning of the terms "new contract", "brought to Swiftships" and "obtained by Lion" as set forth in Swiftships' Motion for Summary Judgment align with common sense and only need to be enforced as they are written to resolve Lion's claim.  As reflected in Lion's discovery responses, Swiftships entered into an agreement with Lion for Lion to assist in Swiftships' efforts to finalize certain contracts (for example, the Iraqi Navy Contract and contracts with Egypt and Kuwait) for a flat consulting fee of $7,500 a month for a period of 12 months – a total of $90,000.  Exhibit 2 to Swiftships' Motion for Summary Judgment, Response to Request for Admission 15.  But like any ongoing business, in addition to these specific contracts, Swiftships was also looking for additional new business opportunities.  Accordingly, the 3% contingency clause would be triggered if Lion found new contract opportunities and brought them to Swiftships – a common clause for commission-based compensation structures.[3]

But there was no need to incentivize Lion to work on the Iraqi Navy Contract because Swiftships had already agreed to pay for Lion's assistance with that contract through the $7,500

---

[2] In the unlikely event that the Court determines that the 3% contingency clause is ambiguous, the vast majority of the terms contained in that clause ("Consultant will be paid 3% of each new contract [ ] obtained by Lion"), as well as almost the entirety of the Lion/Swiftships Agreement, were Lion's creation.  *See* Lyons Decl. ¶¶ 5, 8, 16, attached as Exhibit B to Plaintiff's Opp. (Lyons admitting that he drafted the Lion/Swiftships Agreement).  Consequently, to the extent that the Court finds any merit in Lion's *contra proferentem* argument, the Court should construe the terms "new contract" and "obtained by Lion" against Lion.  *Maersk Line, Ltd. v. United States,* 513 F.3d 418, 423 (4th Cir. 2008).

[3] Admiral Lyons wants the 3% contingency clause language to mean that it applies to all contracts in which he *participated*, but that is not what the contract says.  *Compare* SUMF Response to No. 1 ("[t]he 3% clause would apply specifically to the Iraqi Navy Contract as well as to any other contracts for which Admiral Lyons'[s] efforts *contributed* in causing the contract to be awarded to Defendant.") (emphasis added) with Lion/Swiftships Agreement ¶ 3 ("Consultant will be paid 3% of each new contract brought to Swift[ships], which was obtained by L[ion].").  *Wilson v. L.B. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984) (court construes a contract as written, not in accordance with what a party wanted it to say).  By its terms, the 3% contingency clause does not apply to every Swiftships contract that Lion assisted on.

monthly consulting payments.  *See* Section II below (noting that Lion admits that the $7,500 monthly payment included work on the Iraqi Navy Contract).  Indeed, it would make little sense to pay Lion twice for the same work:  once through a $7,500 monthly consulting payment and then again, to the tune of over $6 million, once Swiftships finalized the contract.

In addition to the undisputed fact[4] that the monthly payments covered Lion's work on the Iraqi Navy Contract, Lion's present claim that the 3% contingency clause applies to the Iraqi contract renders meaningless the contract terms "new" and "brought to Swiftships" found in the 3% contingency clause.  Under Lion's tortured interpretation of this clause, Lion is apparently entitled to a contingency fee on <u>every</u> <u>contract</u> <u>awarded</u> <u>to</u> <u>Swiftships</u> <u>that</u> <u>Lion</u> <u>participated</u> <u>in</u> regardless if it is a new or existing contracting opportunity, or if Lion brought the opportunity to Swiftships or if Swiftships brought the opportunity to Lion.  "No word or clause in a contract will be treated as meaningless if a reasonable meaning can be assigned to it…."  *Pocahontas Mining LLC v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008).  Given that Lion does not dispute that Swiftships discovered and pursued the Iraqi opportunity on its own and then later retained Lion to assist Swiftships, the terms "new contract" and "brought to Swiftships" must be enforced to bar Lion's claim against Swiftships.

---

[4] The only issues raised in Swiftships' Motion for Summary Judgment are that the plain meaning of the terms contained in the 3% contingency clause and the undisputed facts establish that the Iraqi Navy Contract was not a "new contract brought to Swiftships, which was obtained by L[ion]."  As a result, Lion's "disputed facts" (Opp. p. 11) are irrelevant to the summary judgment analysis.  Lion presented no evidence disputing Swiftships' key undisputed facts for the instant motion:

a.) The Iraqi Navy opportunity predated the Swiftships/Lion agreement;

b.) Swiftships initially found and pursued award of the Iraqi Navy opportunity without Lion;

c.) Swiftships identified the Iraqi Navy opportunity to Lion; and

d.) With Swiftships already locked in on the Iraqi Navy opportunity, Lion provided assistance to Swiftships at the end of the effort to land the Iraqi Navy Contract.

Based upon the plain and ordinary meaning of the clear and unambiguous terms of the Lion/Swiftships Agreement, Swiftships is entitled to summary judgment on Lion's breach of contract count, Count 1 of Lion's Complaint.

II. **Swiftships is Entitled to Summary Judgment on Lion's Unjust Enrichment Claim Because Lion Failed to Establish that its Work on the Iraqi Navy Contract Was Outside the Scope of the Lion/Swiftships Agreement**

In its Opposition, Lion does not dispute that under Virginia law proof of an express contract covering the services or work in question precludes relief under a quasi-contractual theory such as unjust enrichment. Opp. at pp. 11-12. Nor does Lion dispute that it seeks recovery for breach of an express contract (*i.e.,* the Lion/Swiftships Agreement attached to and specifically incorporated by reference into the Complaint). Instead, Lion argues that its unjust enrichment claim is merely an alternate theory of recovery, and that a court may imply a contractual relationship when the work or services for which relief is sought is outside the scope of the express contract. *Id.* But that is an argument better suited in a response to a motion to dismiss for failure to state a claim rather than in response to a motion for summary judgment after discovery has concluded.[5]

Here, at the summary judgment stage, in response to Swiftships' motion seeking to enforce the terms of the Lion/Swiftships Agreement, Lion must present sufficient *evidence* that would make it possible for the trier of fact to find that the work or services Lion provided in connection with the Iraqi Navy Contract was outside the scope of the Lion/Swiftships Agreement. *See, e.g., Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009) ("Where the record taken as a whole could not lead a rationale trier of fact to find for the nonmoving party, there is no

---

[5] Indeed, *Forest City Commercial Dev., Inc. v. Agere Sys., Inc.*, Case No. 3:08CV328, 2010 WL 2245499 (E.D.Va. June 1, 2010), upon which Lion relies at Opp. p.12, is a motion to dismiss case that did not consider the evidentiary record and is therefore inapplicable to the current summary judgment analysis.

genuine issue for trial."); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (to avoid summary judgment, "there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). With Lion unable to provide any evidence that its work related to the Iraqi Navy Contract was beyond the scope of the Lion/Swiftships Agreement, there is no genuine issue for trial, and the matter is ripe for summary judgment. *Id.*

Here, Lion presented no evidence that Lion's work or services related to the Iraqi Navy Contract was outside the scope of the Lion/Swiftships Agreement. Instead, Lion admits the contrary: that Swiftships' $7,500 monthly payments were to compensate Lion for all the work being performed under the Lion/Swiftships Agreement, including assisting with the Iraqi Navy Contract and contracts with Egypt and Kuwait. *See* Opp. at p.6 ("Defendant even directed Admiral Lyons to make obtaining the Iraqi Navy Contract his first priority."); Lion's SDMF, Response to No. 1 ("Plaintiff contends that the $7,500 per month payment was meant to compensate Plaintiff for all work that Admiral Lyons was performing under the Agreement (in addition to his work in obtaining the Iraqi Navy Contract for Defendant)…);" Lions Dep. Tr. 114:4-7 (Plaintiff's Exhibit B) ("Q. Yes. But you understood that as part of the $7,500, you would be working in part on the Iraqi Navy Contract; correct? A. Correct."). *See also* Lion's Response to Request for Admission 15 (Exhibit 2 to Swiftships' Motion for Summary Judgment) ("Lion Associates did receive $7,500 per month for a period of 12 months … for services relating to the Iraqi Navy Contract"). Simply stated, Lion has failed to present <u>any</u> evidence that its work on the Iraqi Navy Contract was outside the scope of the Lion/Swiftships Agreement that Lion alleges was breached.

Because there is no dispute that the scope of the Lion/Swiftships Agreement expressly covered Lion's work related to the Iraqi Navy Contract, Swiftships is entitled to summary judgment on Lion's claim for unjust enrichment.

## CONCLUSION

Based upon the terms of the 3% contingency clause, the undisputed facts and the authorities set forth above and in its initial memorandum, Swiftships respectfully moves this Court for summary judgment on Counts 1 and 2 of Lion's Complaint.

Dated: October 12, 2010

> Respectfully submitted,
> /s/
> Douglas C. Proxmire, Esq. (VSB #27890)
> Benjamin G. Chew, Esq. (VSB #29113)
> Nigel L. Wilkinson, Esq. (VSB #46500)
> PATTON BOGGS LLP
> 2550 M Street, N.W.
> Washington, DC 20037
> Telephone: (202) 457-6000
> Facsimile: (202) 457-6315
> dproxmire@pattonboggs.com
> bchew@pattonboggs.com
> nwilkinson@pattonboggs.com
>
> Hassan M. Ahmad, Esq. (*admitted Pro Hac Vice*)
> The HMA Law Firm
> 1568 Spring Hill Road, Suite 200A
> McLean, Virginia 22102
> Telephone: (703) 964-0245
> Facsimile: (703) 997-8556
> hma@hmalegal.com
>
> *Counsel for Defendant Swiftships Shipbuilders, LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 12th day of October 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel named below:

J. Douglas Baldridge, Esq.
A. Wayne Lalle, Jr., Esq.
Lauren D. Eade, Esq.
Elizabeth E. Forbes, Esq.
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004
Telephone: (202) 344-4703
Facsimile: (202) 344-8300
jbaldridge@venable.com
wlalle@venable.com
ldeade@venable.com

*Counsel for Plaintiff Lion Associates, LLC*

/s/_____
Douglas C. Proxmire (VBN 27890)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone:  (202) 457-6000
Facsimile:  (202) 457-6315
dproxmire@pattonboggs.com

*Counsel for Defendant Swiftships Shipbuilders, LLC*

5125162