UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **LION ASSOCIATES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. : 1:10-CV-189 (GBL/TRJ) |
| ) | |
| **SWIFTSHIPS SHIPBUILDERS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT SWIFTSHIPS SHIPBUILDERS, LLC'S MOTION IN LIMINE TO STRIKE PLAINTIFF LION ASSOCIATES, LLC'S CLAIM FOR A COMMISSION UPON THE TRAINING CONTRACT**

Defendant Swiftships Shipbuilders, LLC ("Swiftships"), in accordance with applicable precedent, moves to strike any evidence in support of Plaintiff Lion Associates, LLC's ("Lion") claim for a commission upon Contract No. N61339-09-C-0034 ("the Training Contract") based on the following grounds:

- Naval Air Systems Command ("NAVAIR") awarded Swiftships the Training Contract, and Admiral Lyons had no contact with NAVAIR as part of his efforts on behalf of Swiftships, and as a result, Lion has no claim that Lion obtained this contract on behalf of Swiftships or that Lion brought this contract to Swiftships.

Based upon the points and authorities set forth below, Swiftships respectfully requests that this Court strike all evidence related to that portion of Lion's claim seeking a commission on the award of the Training Contract to Swiftships.

I. **STATEMENT OF FACTS**

   A. **The Swiftships/Lion Agreement, Lawsuit Arising Therefrom and Damages Sought**

On May 1, 2009, Lion and Swiftships entered into a written agreement ("the Swiftships/Lion Agreement" or "Agreement") under which Lion agreed to perform certain

1

5132886

marketing and promotional work for Swiftships, and Swiftships agreed to pay Lion for this work.

**Exhibit 1, ¶¶9-10 (Complaint**[1]**).** Specifically, Swiftships agreed to pay Lion "3% of each new contract brought to Swift[ships], which was obtained by L[ion]." **Exhibit 1, ¶11.** Lion's Complaint seeks recovery of the 3% contingency fee based upon the anticipated gross value of two contracts that the United States Navy ("US Navy") awarded to Swiftships in 2009:

(A) contract number N00024-09-C-2256 in the amount of $180,998,189 for the design and manufacture of patrol vessels for the Iraqi Navy ("the Shipbuilding Contract"); and

(B) contract number N61339-09-C-0034 in the amount of $23,000,000 for the training associated with contract number N00024-09-C-2256 ("the Training Contract").

**Exhibit 1, ¶1.** This motion focuses upon Lion's claim for a commission arising from the Training Contract.

**B.  Lion Failed to Perform Any Work on Swiftships' Behalf in Connection with the Training Contract**

The United States Navy conducts its business through four systems commands or "SYSCOMs":

- Naval Air Systems Command ("NAVAIR")
- Naval Sea Systems Command ("NAVSEA")
- Space and Naval Warfare Systems Command ("SPAWAR")
- Naval Supply Systems Command ("NAVSUP")

**Exhibit 2 (Navy's formal identification of its Systems Commands).** Through these four SYSCOMs, the Navy awards contracts to procure goods, materials and services and administers these contracts. **Exhibit 3 (Describing the Navy effort using the four SYSCOMs as part of the Navy's Enterprise Resource Planning Program).** Through the Navy's Enterprise

---

[1] "Complaint" refers to the Complaint originating this matter, filed before this Court on March 2, 2010.

2

5132886

Resource Planning ("ERP"), each of these four SYSCOMs operate as separate and discrete entities with disparate functions.  **Exhibit 2.**

The two Navy contracts at issue in the instant case were issued by different Navy SYSCOMs.  The Shipbuilding Contract was issued by NAVSEA.  **Exhibit 4 (Contract No. N00024-09-C-2256, Shipbuilding Contract).**  The Training Contract was issued by NAVAIR.  **Exhibit 5 (Contract No. N61339-09-C-0034, Training Contract).**  A NAVSEA Contracting Officer (Maureen Barlow) signed the Shipbuilding Contract on behalf of the Navy, and a NAVAIR Contracting Officer (Beverly Jean Gordon) signed the Training Contract on behalf of the Navy.  **Exhibit 4, pp. 1 and 71; Exhibit 5, p. 1.**  The Shipbuilding Contract and the Training Contract constitute two wholly distinct agreements with differing specifications, performance responsibilities and payment terms.  Compare **Exhibit 4** with **Exhibit 5**.

During discovery, when asked to identify all contacts made on Swiftships' behalf with the Navy, Lion only identified contacts made with NAVSEA officials prior to the award of the Shipbuilding Contract.  Specifically, Lion's sworn interrogatory response stated in pertinent part:

> Admiral Lyons then contacted a captain in the Navy's International Program Office in order to determine who was heading the Iraqi Navy program.  The Captain informed Admiral Lyons that NAVSEA PMS 325, led by Rear Admiral William Landay, was heading the Iraqi Navy program. . . . On May 5, 2009, Admiral Lyons called Rear Admiral Landay to ask if he was aware of problems developing in the Iraqi Navy program. Rear Admiral Landay confessed that he had no knowledge on that topic at that time. Admiral Lyons then explained to the Rear Admiral that because of the apparent noncooperation of NAVSEA, the United States stood a chance of losing the Iraqi Navy Contracts to France or Italy.  Because NAVSEA had refused to provide the Iraqis and U.S. personnel in Iraq certain information they had requested and were required in order to obtain approval from the Iraqi Minister of Defense, it was impossible to move forward with the Iraqi Navy Contracts.  Admiral Lyons also told Rear Admiral Landay that information was being promulgated by NAVSEA in regard to the financial and professional competence of Swiftships.  As of May

3

> 2009, it was clear that an adversarial relationship between NAVSEA personnel and Swiftships existed.
>
> In the May through June 2009 timeframe, Admiral Lyons heard back from Rear Admiral Landay who told him that he was getting up to speed and that NAVSEA transmit the required information to Iraq so that the program could move forward. . . . as a result of the many discussions and emails between Admiral Lyons and Rear Admiral Landay, and as a result of the actions Swiftships took at the direction of Admiral Lyons with respect to civilian and other lower-level Naval personnel, NAVSEA's attitude changed from adversarial to cooperative . . .

**Exhibit 6, Interrogatory Response #6 (Plaintiff Lion Associates, LLC's Supplemental and Amended Responses to Defendant's First Set of Interrogatories).** In these interrogatory responses and in all of Lion's other discovery responses, Lion fails to mention a single contact with NAVAIR on behalf of Swiftships.

In his deposition, Admiral Lyons was asked to identify the basis for Lion's entitlement to a commission on the Training Contract. **Exhibit 7, 202:11-203:12 (Excerpts of Admiral Lyons' Deposition Transcript).** In response, Admiral Lyons admitted that Lion's only basis for the claim under the Training Contract was his understanding that the Shipbuilding Contract and the Training Contract were linked. Specifically, Admiral Lyons testified:

> **[Counsel for Swiftships] Q.  And as we defined at the very beginning of the deposition, the Iraqi Navy contract actually refers to two contracts, one with NAVSEA and then a training contract; correct?**
>
> [Admiral Lyons] A.  Correct.
>
> **Q.  And the training contract was with NAVAIR, not NAVSEA; correct?**
>
> A.  I don't recall exactly the details of that.
>
> **Q.  Did you have any contacts with anyone at NAVAIR at any time?**

4

>     A.  Not that I recall.  My contract was a natural flow from the basic contract.  You had to have a training program for them to be able to operate the ships and maintain them.  That was a natural outgrowth.
>
>     **Q.  So is it part of your claim that you were entitled in the -- that you were entitled to 3 percent of the value of the NAVAIR training contract?**
>
>     A. Correct.
>
>     **Q. Any other basis other than your testimony that it sprung naturally from the other part of the Iraqi Navy contract?**
>
>     A. Correct.

*Id.*  Other than the Admiral's testimony that he believed the Shipbuilding Contract would lead to the award of the Training Contract, Lion has failed to identify any other ground to support a claim for a commission on the Training Contract.

## II.     ARGUMENT

### A.     Since Lion Took No Action to Support NAVAIR's Award of the Training Contract, this Court Should Exclude Lion from Introducing Any Evidence Related to that Contract

Rule 402 of the Federal Rules of Civil Procedure states in pertinent part, "Evidence which is not relevant is not admissible."  In this case, for evidence to be relevant, the evidence must be material to the issue of whether Swiftships breached its agreement with Lion, whether Swiftships was unjustly enriched or the amount of damages that Lion is entitled to recover.  Fed. R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable that it would be without the evidence."  *See also Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union*, 586 F.Supp.2d 632, 635 (E.D. Va. 2008).  And the probability must be logical.  *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c][ii] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2010).

Evidence related to NAVAIR's award of the Training Contract to Swiftships is not relevant to Lion's breach or unjust enrichment claims or to Lion's damages thereunder because Lion failed to perform any marketing or promotional work in connection The Training Contract. *See* **Exhibits 6 and 7.** Specifically, Lion has acknowledged that the only efforts taken on Swiftships' behalf were his communications with NAVSEA in support of the Shipbuilding Contract. *Id.* Based upon Admiral Lyons' admission during discovery that he only contacted NAVSEA representatives related to the Shipbuilding Contract, not NAVAIR officials related to the Training Contract, NAVAIR's award of the Training Contract to Swiftships has no relevance to Lion's claims or the amount of Lion's damages, if any, arising under breach or unjust enrichment counts.

Moreover, to the extent there is any limited relevance of the NAVAIR award of the Training Contract to Swiftships, the Training Contract should still be excluded as an introduction before the jury would be materially prejudicial to Swiftships as it could confuse the issues and mislead the jury about the work that Lion performed on Swiftships' behalf. Fed. R. 403 ("Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…."). *See also Smithfield Foods, Inc.* 586 F.Supp.2d at 635 ("When the harmful component of relevant evidence becomes unduly prejudicial, a court should exclude it from consideration by the jury. … In the Fourth Circuit, undue prejudice is defined as a genuine risk that the emotions of the jury will be excited to irrational behavior, and that risk is disproportionate to the probative value of the offered evidence.")(internal citations and quotations omitted).

Here, the introduction into evidence of a second Navy Contract in an amount in excess of $23,000,000 could/would prejudice and/or confuse the jury as to the efforts that Lion took on

6

5132886

Swiftships' behalf, and the benefit that Swiftships received as a result of Lion's work. Moreover, as set forth in the terms of the Lion/Swiftships Agreement, Lion may only receive a commission on those contracts "brought to Swift[ships], which [were] obtained by L[ion]." Given that no set of facts could be adduced to establish that Lion brought and/or obtained the Training Contract to/for Swiftships, the probative value, if any, of the Training Contract to the issues in dispute is significantly outweighed by the prejudice that Swiftships may suffer if the jury mistakenly believes that Lion had a hand in the NAVAIR award of the Training Contract.

### III. CONCLUSION

For the foregoing reasons, Swiftships respectfully requests that this Court enter an order preventing Lion from submitting any evidence in support of the claim for a 3% commission based upon the award of the Training Contract to Swiftships.

Dated: November 22, 2010

Respectfully submitted,

/s/ _____
Douglas C. Proxmire, Esq. (VSB #27890)
Benjamin G. Chew, Esq. (VSB #29113)
Nigel L. Wilkinson, Esq. (VSB #46500)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
dproxmire@pattonboggs.com
bchew@pattonboggs.com
nwilkinson@pattonboggs.com

Hassan M. Ahmad, Esq. (*admitted Pro Hac Vice*)
The HMA Law Firm
1568 Spring Hill Road, Suite 200A
McLean, Virginia 22102
Telephone: (703) 964-0245
Facsimile: (703) 997-8556
hma@hmalegal.com
*Counsel for Defendant Swiftships Shipbuilders, LLC*

5132886