UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **LION ASSOCIATES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. : 1:10-CV-189 (GBL/TRJ) |
| ) | |
| **SWIFTSHIPS SHIPBUILDERS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT SWIFTSHIPS SHIPBUILDERS, LLC'S MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S TRIAL EXHIBITS 36, 37, 48, 49, 50 AND 56, AND ANY TESTIMONY CONCERNING THOSE EXHIBITS**

Defendant Swiftships Shipbuilders, LLC ("Swiftships"), in accordance with applicable precedent, moves to exclude Plaintiff Lion Associates, LLC's ("Lion") Trial Exhibits 36, 37, 48, 49, 50 and 56, and any testimony concerning those exhibits, based on the following grounds:

- Plaintiff Lion seeks to introduce into evidence certain e-mails sent or received by Swiftships' General Counsel, Faisal Gill, to Lion's Administrative Assistant, Lilian Devaux, and Lion's principal, ADM James A. Lyons (ret.), for the apparent purpose of misleading the jury and causing it to draw improper inferences of fraud or some other wrongful act by Swiftships. Regardless, these communications are irrelevant to proving Lion's contract and unjust enrichment claims and should be excluded from evidence at trial.

- Specifically, Plaintiff seeks to introduce into evidence e-mails between Mr. Gill, Ms. Devaux, and ADM Lyons that were sent after the parties entered into Lion's consulting Agreement on May 1, 2009. In the e-mails, Mr. Gill simply requested that Lion change the named party from The Gill Law Firm to Swiftships but failed to inform Lion that the Agreement had already been executed one week earlier and that Swiftships' President, Calvin LeLeux, had added hand-written terms to the contingency fee clause (the "3% clause") clarifying that the 3% clause did not apply to pre-existing business opportunities including the Iraqi Navy Contract.

- One month later on June 4, 2009, Mr. Gill sent Lion a copy of the final Agreement (including Mr. LeLeux's hand-written amendment to the 3% clause) as executed on May 1, 2009. Lion did not object to the clarifying terms Mr. LeLeux added at the time and has since averred in its Complaint that the

1

>    Agreement the parties entered into on May 1, 2009 includes the terms Mr. LeLeux added to the 3% clause. It is this final, executed version of the Agreement which Lion seeks to enforce in this action. *See* Complaint, ¶¶ 9 and 11, and Complaint Ex. 1.

- The Court should exclude from evidence at trial Mr. Gill's e-mails with Lion (and any testimony concerning those communications) because: (1) the timing of Mr. Gill's delivery of the executed copy of the Agreement to Lion and his omissions or errors in failing to communicate the existence of a final executed Agreement as of May 1, 2009 (with hand-written changes by Mr. LeLeux) neither prove nor disprove, and are of no factual consequence to, Lion's breach of contract and unjust enrichment claims; (2) pursuant to FRE 403, any possible probative value that this evidence might have is substantially outweighed by the danger of unfair prejudice to Swiftships, confusion of the issues, and misleading the jury; and (3) to the extent that Lion seeks to introduce these communications into evidence to influence the jury's consideration of Mr. Gill's (or Mr. LeLeux's) credibility, they constitute improper character evidence that should be excluded pursuant to FRE 404(b).

## I.    STATEMENT OF FACTS

### A.    There Is No Dispute that the Parties Entered into the Agreement on May 1, 2009, and that the Agreement Includes the Hand-Written Terms Mr. LeLeux to the Agreement's 3% Clause.

On May 1, 2009, Lion and Swiftships entered into a written agreement (the "Agreement") under which Lion agreed to perform certain marketing and promotional work for Swiftships, and Swiftships agreed to pay Lion for this work. **Exhibit 1,** ¶9 (Complaint[1]). The Agreement sets forth what the parties have been calling in this litigation the "3% clause," which reads: "Also, Consultant will be paid 3% of each new contract *brought to Swift[ships], which was* obtained by L[ion]." The italics represent the handwritten terms added by Swiftships' President Calvin LeLeux prior to his signing the Agreement on May 1, 2009; the remainder of the Agreement (¶¶ 1 through 5) was drafted by Lion. *See id.* ¶ 11.

The main issue of dispute in this case is whether the parties agreed that the 3% clause

---

[1] "Complaint" refers to the Complaint originating this matter, filed before this Court on March 2, 2010.

2

5132198

would apply to two contracts the United States Navy awarded Swiftships in the Fall of 2009—the first, for the construction of nine patrol boats for the Iraqi Navy, and the second, for training of crews of the patrol boats. *See* Complaint ¶ 15.[2]  Collectively, these contracts have been referred to as the "Iraqi Navy Contract."  However, there is no dispute that the parties agreed to the hand-written terms added to the 3% clause by Mr. LeLeux in the final version of the Agreement executed on May 1, 2009, which Lion admitted in its Complaint. *See* Complaint, ¶ 11 and Ex. 1 to Complaint.

Lion has repeated this admission during the motions to dismiss phase and discovery:

- "On May 1, 2009, Swiftships and Admiral Lyons' (sic) company, Lion Associates, entered into a contract (the "Agreement")." (Docket No. 7, p. 7 of 23; Docket No. 20, p. 2 of 20).

- "In exchange for Admiral Lyon's (sic) services, the Agreement requires Swiftships to pay Admiral Lyons $7,500 a month for one year and '3% of each new contract brought to Swift[ships] which was obtained by [Admiral Lyons].'" (*Id.*, brackets in original).

- "[B]oth Admiral Lyons, the president and C.E.O. of Lion Associates, and Calvin LeLeux, the president and C.E.O. of Defendant Swiftships …, signed the instrument and in so doing acknowledged and accepted that the terms therein represent the parties' agreement." (Docket No.7, p. 10 of 23).

- "In May, 2009, I entered into a valid and binding written contract (the "Agreement") with Defendant Swiftships Shipbuilders, LLC ("Swiftships")." (Docket No. 7-2, Lyons Declaration ¶ 3).

- Q. … Do you see that language handwritten, "brought to Swift which was" …?
  A. I see it.
           ***
  Q. Did you approve of the handwritten interlineation here?
  A. I—when it came in, I saw this written in.  I saw where to me it made no difference to the original contract, since Swiftships did not have a contract from

---

[2] Swiftships has also moved this Court for an Order striking evidence in support of Lion's claim for a commission upon the "Training Contract" because Lion admits it had no contact with Naval Air Systems Command, the Naval System Command that awarded Swiftships the contract.  As a result, Lion has no claim that Lion obtained this contract on behalf of Swiftships or that Lion brought this contract to Swiftships.

3

> the Navy, and the contract I was working on would be a new contract brought to Swiftships.
> Q.    So this language was acceptable to you; correct?
> A.    Correct.
> (**Exhibit 2**, Lyons Tr. 141:10-12; 142:3-13).

**B.    Lion Seeks to Introduce into Evidence at Trial Certain E-Mail Communications Between Lion and Mr. Gill Concerning Mr. Gill's Belief as to Whether the Parties' Agreement Included the Hand-Written Terms Added by Mr. LeLeux to the 3% Clause.**

Lion seeks to introduce into evidence at trial the following e-mails between Mr. Gill and Lion to show Mr. Gill's belief as to whether the parties agreed to the hand-written terms Mr. LeLeux added to the 3% clause:

- A May 8, 2009 e-mail exchange between Mr. Gill and ADM Lyons's assistant, Lilian Devaux, regarding language changes to the Agreement. Ms. Devaux asked whether Swiftships had any changes to the Agreement, to which Mr. Gill responded, "Sure, we just need to change the name from Gill Law Firm to Swiftships Shipbuilders, LLC, a group of Apex Group. And signature is Calvin LeLeux." (Plaintiff's Trial Ex. 36). **Exhibit 3**.

- A May 8, 2009 e-mail from ADM Lyons to Mr. Gill enclosing a draft revised version of the Agreement. (Plaintiff's Trial Ex. 37). **Exhibit 4.**

- Various e-mails dated between May 12 and 20, 2009 between ADM Lyons and Mr. Gill regarding ADM Lyons's not yet receiving a signed copy of the Agreement from Swiftships. (Plaintiff's Trial Exs. 48, 49 and 50). **Exhibit 5.**

- A June 4, 2009 e-mail from Mr. Gill to ADM Lyons enclosing a copy of the fully-executed Agreement dated May 1, 2009. (Plaintiff's Trial Ex. 56). **Exhibit 6.**

Lion also presumably seeks to introduce into evidence at trial witness testimony concerning these communications.

**C.    Lion Apparently Seeks to Introduce This Evidence for the Purpose of Drawing Improper Inferences of Fraud or Some Other Wrongdoing that Is Not Alleged in This Action.**

On October 25, 2010, Lion provided Swiftships with a copy of its mediation letter to Magistrate Judge Thomas Rawles Jones, Jr. with a letter outlining, among other things, its position on the issues raised in this case. *See* **Exhibit 7** (excerpts from Lion's Oct. 25, 2010

4

letter).[3]  In its letter, Lion discusses the above-referenced e-mail communications and its intent to use them at trial.

First, Lion asserts at page 3 of its letter that Mr. Gill's communications (in the referenced e-mails, above) show that "Swiftships' contemporaneous actions are inconsistent with [Swiftships'] position" that the parties agreed that the 3% clause would not apply to the Iraqi Navy Contract.  *Id.* p. 3.  But it is telling that Lion never actually explains how these e-mails allegedly show that Swiftships had initially agreed that the 3% clause would apply to the Iraqi Navy Contract.  Instead, the gist of Lion's discussion concerning these communications is that there is something wrongful or fraudulent to be inferred from Mr. Gill's statements or omissions with respect to the hand-written terms that Mr. LeLeux added to the 3% clause.

Second, on page 6 of its letter, Lion suggests that the e-mails at issue and attending circumstances should be considered by the jury when determining Swiftships' credibility because the parties dispute whether they intended the 3% clause to apply to the Iraqi Navy Contract.  Once again, without ever explaining how these communications impact Swiftships' or Mr. Gill's credibility one way or another, Lion's representations belie its actual intent to use Mr. Gill's communications to infer fraudulent inducement or some other wrongful conduct where no such claim has been made in this case:

> Mr. LeLeux made handwritten changes to the Agreement on May 1, 2009, adding the words, "brought to Swift, which was," but he did not send them to Admiral Lyons.  After these changes were made, Mr. Gill specifically told Admiral Lyons that the ***only***

---

[3] Although this letter was a mandatory pre-mediation disclosure, it is neither a proposed compromise nor being offered at trial as evidence to prove the validity, invalidity or amount of a disputed claim, and is therefore not subject to Fed. R. Evid. 408.  *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 408.08[1] (Joseph M. McLaughlin, ed., Matthew Bender 2s ed. 2010) (Rule 408 does not prohibit the use of offers or agreements of compromise if offered for some purpose other than proving liability for, the invalidity of, or the amount of a disputed claim).

> changes to be made to the Agreement were the signature line and the name substitution.  Mr Gill made no mention of the handwritten changes added by Mr. LeLeux.  There is no reason Mr. Gill could not have or should not have alerted Admiral Lyons at the time to the changes Mr. LeLeux made to the Agreement.

Ex. 7 at 6 (emphasis in original).

## II. ARGUMENT

### A. Any Evidence Concerning When Mr. Gill Forward ADM Lyons the Final Fully-Executed Agreement is Irrelevant to Plaintiff's Claims for Breach of Contract or Unjust Enrichment.

Mr. Gill's communications with Lillian Devaux and ADM Lyons concerning when the executed copy of the Agreement was delivered to Lion and whether Mr. Gill communicated that the Agreement had been executed with the hand-written terms added by Mr. LeLeux are irrelevant to Lion's claims for breach of contract or unjust enrichment, and therefore must be excluded from evidence at trial.  Fed. R. Evid. 402 (Evidence that is not relevant is never admissible).  Such evidence is irrelevant because it has no tendency to make a fact consequential to determining whether or not Swiftships breached the Agreement or whether Swiftships was unjustly enriched, more or less probable.  Fed. R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable that it would be without the evidence."  *See also Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union*, 586 F.Supp.2d 632, 635 (E.D. Va. 2008).  And the probability must be logical.  *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 401.04[2][c][ii] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2010).

The evidence cited above in Section I.B. is irrelevant to Lion's claims for two reasons.  First, in order to succeed on its breach of contract claim, Lion must prove (1) the existence of a duly executed and enforceable agreement; (2) performance or an offer to perform by Lion in

6

accordance with the terms of the agreement, (3) failure by Swiftships to perform or some other breach, (4) that the breach caused Lion actual damages, and (5) the damages are recoverable under Virginia law. *Carley Capitol Group v. City of Newport News*, 709 F. Supp. 1387, 1397 (E.D. Va. 1989).

None of the e-mails at issue here, nor any attendant testimony, has any consequence on whether Lion can prove each element of its breach of contract claim or whether the 3% clause applied to the Iraqi Navy Contract. As Lion has repeatedly admitted, when the parties entered into the Agreement on May 1, 2009, they agreed to <u>all</u> the terms in the Agreement, including the hand-written terms added by Mr. LeLeux to the 3% clause. *See* Section I.A, *supra*. Thus, the facts that (1) Mr. Gill did not deliver a copy of the executed Agreement to Lion until one month later, (2) he neglected to inform Lion in his May 8 e-mail exchange that the Agreement had already been executed on May 1, 2009, and (3) Mr. LeLeux had added terms to clarify that the 3% clause did not apply to the Iraqi Navy Contract, are irrelevant to proving Lion's breach of contract claim, and therefore should be excluded from evidence at trial. This evidence is similarly irrelevant to proving Lion's unjust enrichment claim.[4]

    **B.**    **Such Evidence Must Also Be Excluded under FRE 403 Because the Danger of Unfair Prejudice Outweighs Any Probative Value.**

Should the Court determine that the above-referenced e-mails do not warrant exclusion based solely on relevance, it should nonetheless exclude them because any possible probative

---

[4] To succeed on its unjust enrichment claim, Lion must prove (1) a benefit conferred on Swiftships by Lion, (2) knowledge of the part of Swiftships of the conferring of the benefit, and (3) acceptance or retention of the benefit by Swiftships in circumstances that render it inequitable for Swiftships to retain the benefit without paying for its value. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F.Supp.2d 565, 576 (E.D. Va. 2004). Nothing in the Gill e-mails referenced above affects the probability that a consequential fact concerning Lion's unjust enrichment claim is true or untrue. The Gill e-mails, and attendant testimony, are similarly irrelevant to Lion's unjust enrichment claim and should be excluded from evidence at trial.

value they might have is substantially outweighed by the danger of unfair prejudice to Swiftships, confusion of the issues, and would be misleading to the jury.  Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury….").  *See also Smithfield Foods, Inc.* 586 F.Supp.2d at 635 ("When the harmful component of relevant evidence becomes unduly prejudicial, a court should exclude it from consideration by the jury. … In the Fourth Circuit, undue prejudice is defined as a genuine risk that the emotions of the jury will be excited to irrational behavior, and that risk is disproportionate to the probative value of the offered evidence.") (internal citations and quotations omitted).

Lion has made it clear that it seeks to introduce the e-mails identified in Section I.B. to cause the jury to infer that Swiftships committed fraud or some other wrongful act because Mr. Gill failed to deliver a copy of the May 1, 2009 Agreement until June 4, 2009, or because Mr. Gill neglected to inform Lion that the Agreement had already been executed with the terms added by Mr. LeLeux.  The implication of Lion's improper inference here is that had ADM Lyons known of Mr. LeLeux's additions on May 1, 2009, Lion would not have performed under the Agreement as written.

But raising such an inference of fraud or other misconduct has no probative value here because Lion has never claimed that it was fraudulently induced into entering into the Agreement.  Indeed, no such claim is made in the Complaint (or any other testimony in this case).  To the contrary, the Complaint embraces and attempts to enforce the hand-written terms added by Mr. LeLeux to the 3% clause.  *See* Complaint ¶¶ 9, 11, and Complaint Exhibit 1.  Therefore, just when Mr. Gill provided a copy of the Agreement to Lion, or whether Mr. Gill neglected to inform Lion about Mr. LeLeux's modification until the final copy of the Agreement

was delivered on June 4, have no probative value.[5]  In other words, had ADM Lyons seen or learned of Mr. Leleux's changes on May 1 or at any time before June 4, by his own admission it would not have affected Lion's performance under the Agreement.

It is clear, therefore, that the improper inference of fraud that Lion seeks to raise by introducing evidence of the Gill e-mails (and attendant testimony) is intended to unfairly prejudice Swiftships, confuse the issues, and mislead the jury.  Given the utter lack of probative value of this evidence, the Court therefore should exclude it from evidence at trial under FRE 403.  *See, e.g., Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994) ("Prejudicial evidence is excluded to protect the jury from drawing improper inferences").[6]

### III.  CONCLUSION

For the foregoing reasons, Swiftships respectfully requests that this Court enter an order excluding Plaintiff's Trial Exhibits 36, 37, 48, 49, 50 and 56, and any testimony concerning those exhibits.

Dated:  November 22, 2010

>                             Respectfully submitted,
>                             /s/_____
>                             Benjamin G. Chew, Esq. (VSB #29113)
>                             Douglas C. Proxmire, Esq. (VSB #27890)
>                             Nigel L. Wilkinson, Esq. (VSB #46500)
>                             PATTON BOGGS LLP
>                             2550 M Street, N.W.
>                             Washington, DC 20037
>                             Telephone: (202) 457-6000
>                             Facsimile: (202) 457-6315
>                             dproxmire@pattonboggs.com

---

[5] Indeed, ADM Lyons has testified that when he saw Mr. LeLeux's modification on June 4 it had no effect in his mind on the meaning of the 3% clause.  *See* Ex. 2.

[6] To the extent Lion seeks to introduce this evidence to challenge Swiftships', Mr. Gill's and/or Mr. LeLeux's credibility, it constitutes improper character evidence that should be excluded under Fed. R. Evid. 404(b).

5132198

bchew@pattonboggs.com
nwilkinson@pattonboggs.com

Hassan M. Ahmad, Esq. (*admitted Pro Hac Vice*)
The HMA Law Firm
1568 Spring Hill Road, Suite 200A
McLean, Virginia 22102
Telephone: (703) 964-0245
Facsimile: (703) 997-8556
hma@hmalegal.com

*Counsel for Defendant Swiftships Shipbuilders, LLC*

5132198