1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE EASTERN DISTRICT OF VIRGINIA
3            Alexandria Division
4       Case No. 1:10-CV-189(GBL-TRJ)
5
6    _____
7    LION ASSOCIATES, LLC,                  )
8                    Plaintiff,             )
9       v.                                  )
10   SWIFTSHIPS SHIPBUILDERS, LLC,          )
11                   Defendant.             )
12   _____ )
13
14
15     DEPOSITION OF ADM JAMES A. LYONS, JR.
16              Washington, D.C.
17              September 1, 2010
18
19
20
21
22
23   Reported by:
24   Mary Ann Payonk, RDR-CRR, CBC, CCP
25   Job No. 32907

1
2
3
4
5           September 1, 2010
6           10:03 a.m.
7
8      Deposition of ADM JAMES A. LYONS, JR.,
9  held at the offices of Patton Boggs, 2550 M
10 Street, N.W., Washington, D.C. pursuant to
11 Notice before Mary Ann Payonk, Certified
12 Realtime Reporter and Notary Public of the
13 District of Columbia.
14
15
16
17
18
19
20
21
22
23
24
25

1              J. Lyons

2      A.   Correct.

3      Q.   Now, directing your attention to
4 compensation, if you look up to paragraph 3,
5 there appears to be an interlineation in the
6 last sentence of that paragraph so that it now
7 reads: "Also, consultant will be paid
8 3 percent of each new contract brought to Swift
9 which was obtained by Lyon."

10          Do you see that language handwritten,
11 "brought to Swift which was" -- which was --

12     A.   I see it.

13     Q.   Whose handwriting is that?

14     A.   I don't know.

15     Q.   Do you see that there appear to be
16 initials to the right of that?

17     A.   Correct.

18     Q.   Do you know whose initials those are?

19     A.   No.

20     Q.   Does the first letter appear to you
21 to be a C?

22     A.   It does.

23     Q.   Might it be Calvin LeLeux?

24     A.   It could be.

25     Q.   But you don't know?

1                    J. Lyons

2        A.   I don't know.

3        Q.   Did you approve of the handwritten

4   interlineation here?

5        A.   I -- when it came in, I saw this

6   written in.  I saw where to me it made no

7   difference to the original contract, since

8   Swiftships did not have a contract from the

9   Navy, and the contract I was working on would

10  be a new contract brought to Swiftships.

11       Q.   So this language was acceptable to

12  you; correct?

13       A.   Correct.

14       Q.   And you never complained or protested

15  to anybody at Swiftships, did you?

16       A.   Correct, because I had the agreement

17  that the $7,500 and 3 percent was acceptable.

18  So to me, it was not an issue.

19       Q.   Was it your understanding that the

20  language that was added, "brought to Swift,

21  which was," was meaningless?

22       A.   As far as I was concerned.

23       Q.   Did you ever ask Mr. LeLeux or

24  anybody at Swiftships or the Gill Law Firm

25  what, if anything, they meant by that?