# VENABLE® LLP

575 SEVENTH STREET NW   WASHINGTON, DC 20004
T 202.344.4000   F 202.344.8300   www.Venable.com

J. Douglas Baldridge
T 202.344.5904
F 202.344.8300
jdbaldridge@venable.com

**FED. R. EVID. 408 COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

October 25, 2010

**BY FACSIMILE**

U.S. Magistrate Judge Thomas Rawles Jones, Jr.
U.S. District Court for the Eastern District of Virginia
401 Courthouse Square
Alexandria, VA 22314

    Re:    Lion Associates, LLC v. Swiftships Shipbuilders, LLC
             Civil Action No. 1:10CV189(GBL/TRJ)

Dear Judge Jones:

On behalf of Lion Associates, LLC ("Lion Associates"), we submit this Settlement Conference Statement in anticipation of the settlement conference scheduled for the above referenced matter on November 2, 2010. We are simultaneously providing this letter to counsel for Swiftships Shipbuilders, LLC ("Swiftships"). We have addressed below the six items set forth in your letter dated September 15, 2010.

**I.**    **Summary of Facts, Claims and Defenses**

This case is a dispute over the meaning of the terms of a contract (the "Agreement") between Lion Associates and Swiftships. Under the Agreement, Lion Associates agreed to assist Swiftships by "marketing, promoting, and explaining the merits and capabilities of [Swiftships] to United States agencies and various national and international companies involved in government contracting." In exchange for Lion Associates' services, the Agreement required Swiftships to pay Admiral Lyons $7,500 a month for one year and "3% of each new contract brought to Swift, which was obtained by LION" (the "3% Clause"). Swiftships was awarded two government contracts because of the work performed by Lion Associates, but breached the Agreement by failing to pay Lion Associates the 3% fee. At the center of this dispute is the meaning of the terms of the 3% Clause. Swiftships contends that because it was already working towards obtaining the government contracts, the contracts are not new contracts brought by Lion Associates. Lion Associates contends that the contracts are new, because at the time the parties entered their Agreement, Swiftships had nothing more than a bid proposal submitted, and clearly had not been awarded the government contracts.

# VENABLE® LLP

U.S. Magistrate Judge Thomas Rawles Jones, Jr.
October 25, 2010
Page 3

financially viable and therefore could realistically deliver on such a large contract. Swiftships was in danger of losing the Iraqi Navy Contract to a competitor. Additionally, Swiftships was concerned that NAVSEA might decide to split the Iraqi Navy Contract among several government contractors, instead of conducting a sole source procurement. At the time Swiftships hired Admiral Lyons, Swiftships had already received the pre-solicitation issued by the U.S. Navy on November 19, 2008 and amended on February 13, 2009. Swiftships submitted a response letter on February 25, 2009.

The content of the negotiations leading to the execution of the Agreement are in dispute. Admiral Lyons negotiated the Agreement with Faisal Gill, general counsel for Swiftships. Admiral Lyons stated that he and Mr. Gill agreed that the 3% Clause would apply specifically to the Iraqi Navy Contract. Mr. Gill disagrees and has stated that the parties agreed specifically that the 3% Clause would not apply to the Iraqi Navy Contract.

However, Swiftships' contemporaneous actions are inconsistent with that position. Admiral Lyons first sent a copy of the Agreement to Mr. Gill on April 13, 2009. Swiftships stated that on May 1, 2009, Calvin Leleux, CEO of Swiftships signed and dated the Agreement, and also inserted the words "brought to Swift which was." On May 8, 2009, Admiral Lyons' secretary, Lillian Devaux, emailed Mr. Gill and requested any verbiage changes he may have had following a discussion between Mr. Gill and Admiral Lyons. Mr. Gill's email stated that the name of the party in the opening paragraph should be changed from "Gill Law Firm" to "Swiftships," and the signature line should read "Calvin Leleux" rather than "Faisal Gill." Mr. Gill's email response mentioned no other changes to the Agreement, and made no mention of any changes to the language now under dispute between the parties. Lion Associates made the changes requested in Mr. Gill's email and sent a new version of the Agreement, incorporating the changes, to Swiftships on May 8, 2009. It was not until June 4, 2009 that Swiftships finally transmitted a version of the Agreement with Mr. Leleux's signature to Lion Associates. The version sent on June 4, 2009 contained Mr. Leleux's signature with a date of May 1, 2009 inserted below Mr. Leleux's signature, the additional handwritten language "brought to Swift, which was," and Mr. Leleux's initials in the margin. The June 4, 2009 version did not incorporate the correct party name in the opening paragraph. It still read "The Gill Law Firm."

Immediately after the Agreement was entered with Swiftships, in April of 2009, Admiral Lyons began work to promote Swiftships to NAVSEA. Admiral Lyons began reaching out to his contacts in the U.S. Navy, and eventually communicated with Rear Admiral Landay, who was in charge of the Iraqi Navy Contract program. Admiral Lyons emailed Admiral Landay, spoke to him on the phone frequently and also met with him in person. Throughout these interactions, Admiral Lyons promoted the merits of

VENABLE® LLP

U.S. Magistrate Judge Thomas Rawles Jones, Jr.
October 25, 2010
Page 6

language, neither Admiral Lyons nor anyone else would ever be able to "obtain" or "bring" a "new contract" to Swiftships.

Assuming that the Court determines the contract terms to be ambiguous, extrinsic evidence will need to be examined to determine the intent of the parties. Essentially, a jury will need to decide who is more credible, because Admiral Lyons and Mr. Gill offer conflicting testimony regarding the intent of the parties. However, Swiftships' actions support Lion Associates' interpretation of the meaning of the terms of the Agreement, as well as substantiate Admiral Lyons' testimony. Mr. Leleux made handwritten changes to the Agreement on May 1, 2009, adding the words, "brought to Swift, which was," but he did not send it to Admiral Lyons. After these changes were made, Mr. Gill specifically told Admiral Lyons that the *only* changes to be made to the Agreement were the signature line and the name substitution. Mr. Gill made no mention of the handwritten changes added by Mr. Leleux. There is no reason Mr. Gill could not or should not have alerted Admiral Lyons at that time to the changes Mr. Leleux made to the Agreement. Why did Mr. Leleux make these changes, and why did Mr. Gill neglect to mention them to Admiral Lyons? Additionally, if the parties had agreed that the 3% Clause would not apply to the Iraqi Navy Contract, Mr. Leleux certainly could have added terms to the Agreement to make that absolutely clear. For instance, Mr. Gill or Mr. Leleux could have inserted the language, "except pre-solicitations already responded to," or reference to the Iraqi Navy Contract. The reason Swiftships did not insert such language is because the parties *had* agreed that the 3% Clause applied to the Iraqi Navy Contract.

On the other hand, if for any reason the Court was to determine that the Agreement's language was unambiguous, Lion Associates contends that it will find that the Agreement unambiguously supports the meaning adopted above by Lion Associates, and so the Court would deny Swiftships' summary judgment motion on that basis.

### b.   Lion Associates Brought the Contract to Swiftships, So It Is Entitled To The 3% Fee

Similarly, Swiftships contends on summary judgment that Lion Associates failed to meet the requirement for payment of the 3% fee under the Agreement, because Lion Associates did not "bring" or "obtain" the contract for Swiftships. Again, these words are ambiguous, as there are two reasonable interpretations of the terms. Swiftships argues that Lion Associates did not "bring" or "obtain" the Iraqi Navy Contract because it already knew about the opportunity. However, Lion Associates has a reasonable interpretation of the words "brought" or "obtained." Lion Associates "brought" or