<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———

**No. 11-1078**

———

LION ASSOCIATES, LLC, a Virginia Limited Liability Company,

        Plaintiff - Appellant,

    v.

SWIFTSHIPS SHIPBUILDERS, LLC, a Louisiana Limited Liability Company,

        Defendant - Appellee.

———

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge. (1:10-cv-00189-GBL-TRJ)

———

Argued:  January 26, 2012          Decided:  April 13, 2012

———

Before AGEE, DAVIS, and FLOYD, Circuit Judges.

———

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———

**ARGUED:** James Douglas Baldridge, VENABLE LLP, Washington, D.C., for Appellant.  Benjamin Gaillard Chew, PATTON BOGGS, LLP, Washington, D.C., for Appellee.  **ON BRIEF:** A. Wayne Lalle, Jr., VENABLE LLP, Vienna, Virginia, for Appellant.  Douglas C. Proxmire, Andrew Zimmitti, Nigel L. Wilkinson, PATTON BOGGS, LLP, Washington, D.C., for Appellee.

———

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lion Associates, LLC (Lion Associates), a global consulting company that provides assistance with defense procurement, contracted with Swiftships Shipbuilders, LLC (Swiftships), a company that specializes in constructing military vessels. The contract stated that Lion Associates would provide marketing and promotion services, and in exchange, Swiftships would pay Lion Associates $7,500 per month for twelve months and "3% of each new contract brought to Swift[ships], which was obtained by Lion [Associates]." Lion Associates subsequently rendered services that assisted Swiftships in securing a contract that Swiftships had been pursuing with the United States Navy. When Lion Associates demanded 3% of the secured contract, Swiftships refused to pay. Lion Associates therefore brought this action alleging breach of contract and unjust enrichment. The district court granted summary judgment in Swiftships' favor as to both claims, and Lion Associates now appeals. For the following reasons, we affirm in part and reverse in part and remand.

I.

The United States Navy, acting through its Naval Sea Systems Command (NAVSEA), issued a Presolicitation Notice (Notice) to the public in November 2008. The Notice, which NAVSEA amended in early February 2009, announced the Navy's need

to procure coastal patrol boats for supply to the Iraqi government and set forth certain desired specifications for the boats. We hereafter refer to this potential procurement contract as the "Iraqi Navy Contract." The Notice invited companies to submit "capability summaries" that included, among other things, information about the company's experience, descriptions of similar craft that it had constructed, and estimated prices and delivery schedules. Lest companies receive the wrong impression, the Notice clarified that it was neither an invitation for bids nor a commitment by the government.

Swiftships, a Louisiana limited liability company, responded on February 25, 2009, and provided a capability summary. It advised NAVSEA of the current craft that it offered, which, with minor modifications, would meet NAVSEA's specifications. Swiftships noted other countries to which it had supplied similar craft and emphasized its ability to begin immediate production. It concluded by requesting a sole-source award.

On April 13, 2009, Faisal Gill, corporate counsel for Swiftships, met with James A. Lyons Jr., a retired four-star admiral. Admiral Lyons is the sole member, President, and Chief Executive Officer of Lion Associates, a Virginia limited liability company. One service that Lion Associates offers is assistance with defense and commercial procurement. For that

3

reason, Gill sought Lion Associates' aid in securing a number of contracts for Swiftships, including the Iraqi Navy Contract, which, at the time of the meeting, Swiftships had not been awarded.

Gill and Admiral Lyons orally agreed that Lion Associates would provide its services to Swiftships but that they would memorialize their agreement in a written contract. According to Admiral Lyons, they discussed Lion Associates' compensation during the meeting. Admiral Lyons insists he told Gill that Lion Associates charged a monthly $7,500 consulting fee and also demanded 3% of each contract it brought to its clients. Admiral Lyons maintains that Gill acquiesced to these compensation terms and further agreed that the 3% fee would apply to the Iraqi Navy Contract. Gill, however, contends that he specifically told Admiral Lyons that the 3% fee would not apply to the Iraqi Navy Contract and that Admiral Lyons recognized as much.

Admiral Lyons drafted a proposed written agreement immediately following the meeting and sent it to Gill that afternoon. Lion Associates, referred to in the proposed agreement as "Consultant," constituted one party. And pursuant to Gill's instructions, Admiral Lyons included The Gill Law Firm as the other party, which the proposed agreement referred to as the "Company." The proposed agreement's main clauses outline the rights and obligations of the parties as follows:

> 2. Purpose. Consultant will provide marketing services and promote the Company by interfacing with the U.S. Government and various national and international companies who are known to have a requirement for Company product and services. Specifically, the Consultant will identify marketing opportunities in U.S. Government and commercial organizations and will explain the Company's capabilities; and represent that the Company . . . can achieve the objectives established by the appropriate enterprise better than any known competitor.
>
> 3. Compensation. Consultant will be reimbursed for this effort at a rate of $7,500.00 per month for a period of twelve (12) months with $7,500.00 paid upon signing and on the 15th of each month thereafter until termination.  Also, Consultant will be paid 3% of each new contract obtained by Lion.

We hereafter refer to these respective provisions as the "Purpose Clause" and the "Compensation Clause."  The proposed agreement also specified that the laws of Virginia would govern all aspects of the contract.

Weeks passed without Swiftships executing and returning the proposed agreement.  Admiral Lyons inquired as to its status. On May 8, 2009, Gill sent Admiral Lyons an e-mail requesting that he substitute Swiftships for The Gill Law Firm as a party in the agreement.  Admiral Lyons promptly made the change, signed the revised proposed agreement, and sent it to Gill.

Swiftships did not sign and return the proposed agreement until June 4, 2009.  When it did, it had added new language to the last sentence of the Compensation Clause.  Whereas before the Compensation Clause provided that "Consultant will be paid

5

3% of each new contract obtained by Lion," Swiftships added language so it stated that "Consultant will be paid 3% of each new contract brought to Swift, which was obtained by Lion." Aside from this addition, the executed agreement mirrored the proposed agreement sent by Admiral Lyons. According to Admiral Lyons, he did not protest the added language because he did not think it altered the original terms of the proposed agreement.

Meanwhile, even before Swiftships returned the executed agreement, Admiral Lyons began directing his efforts to securing the Iraqi Navy Contract for Swiftships. Before he intervened, Swiftships was experiencing problems with NAVSEA. Admiral Lyons maintains that a preexisting adversarial relationship existed between NAVSEA and Swiftships and that NAVSEA had concerns about Swiftships' financial strength. Moreover, Swiftships faced serious competition from other companies. Swiftships therefore enlisted Admiral Lyons to break its impasse with NAVSEA and provided him with information to assist him in doing so.

Admiral Lyons rendered assistance that eventually helped Swiftships overcome these obstacles and secure the Iraqi Navy Contract. He reached out to a high-ranking admiral in NAVSEA to correct any misinformation NAVSEA had about Swiftships and to provide positive information about Swiftships' capabilities. Using the information that he received from Swiftships, Admiral Lyons conveyed to the NAVSEA admiral that Swiftships was

financially strong.  He also stressed the importance of granting a sole-source award rather than splitting the procurement among various companies.  These conversations began before Swiftships returned the executed agreement and continued afterward.

On September 25, 2009, NAVSEA awarded the Iraqi Navy Contract to Swiftships on a sole-source basis.  The contract amounted to $180,998,189.  Swiftships also obtained a contract to provide training services for an additional $23,000,000.

After Swiftships received the Iraqi Navy Contract, the parties' attention turned to the effect, if any, that the award had on Lion Associates' compensation.  It is undisputed that Swiftships paid the monthly $7,500 to Lion Associates from May 2009 until April 2010.  But it did not pay Lion Associates 3% of the Iraqi Navy Contract.  And when Lion Associates attempted to collect 3% of the contract, Swiftships rebuffed it.

Lion Associates therefore filed a complaint in the Eastern District of Virginia on March 2, 2010.  It invoked the district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Lion Associates asserted two causes of action against Swiftships: breach of contract and unjust enrichment.  It based both theories on Swiftships' failure to pay the 3% fee from the Iraqi Navy Contract.  Lion Associates sought damages in the amount of $6,119,946.

Swiftships filed a motion for summary judgment on September 27, 2010, which the district court granted. As to the breach of contract claim, the district court reasoned that the 3% fee provision was unambiguous and that Lion Associates was not entitled to a 3% fee because Swiftships had identified and begun pursuing the Iraqi Navy Contract before the agreement. The district court granted summary judgment as to the unjust enrichment claim on the basis that the existence of the written contract defining the parties' rights and obligations precluded such a claim.

Lion Associates filed this timely appeal. It contends that the district court erred in granting Swiftships' motion for summary judgment as to both its breach of contract claim and its unjust enrichment claim. We address each in turn.

II.

We review the district court's order granting summary judgment de novo. <u>Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.</u>, 476 F.3d 231, 234 (4th Cir. 2007). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir.

2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). Because jurisdiction in this case rests on diversity jurisdiction, we apply the substantive law of Virginia. See Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 722 (4th Cir. 2000).

### III.

We first address whether the district court erred in granting summary judgment as to Lion Associates' breach of contract claim. At the outset, we note that neither Lion Associates nor Swiftships challenges whether the executed agreement with Swiftships' added language controls. Both parties assume that it does; therefore, so do we. Lion Associates contends that the language of the 3% fee provision is ambiguous and that the district court therefore erred in failing to consider parol evidence concerning whether the parties intended for the fee to apply to the Iraqi Navy Contract. Swiftships, however, maintains that the district court did not err because the language of the 3% fee provision is unambiguous and it does not apply to the Iraqi Navy Contract.

In construing a contract, our overriding objective is to determine and effectuate the parties' intention. Va. Elec. & Power Co. v. Norfolk S. Ry. Co., 683 S.E.2d 517, 525 (Va. 2009). The starting point for ascertaining the parties' intention is

9

the language of the contract. Id. Only if the language of the contract is ambiguous do we consider parol evidence that is probative of the parties' intention. Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E.2d 663, 667-68 (Va. 2002). If the terms of the contract are clear and unambiguous, we must construe them according to their plain meaning without resort to parol evidence. TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 557 S.E.2d 199, 200 (Va. 2002).

Ambiguity arises only when a contract "may be understood in more than one way or when it refers to two or more things at the same time." Eure, 561 S.E.2d at 668 (quoting Granite State Ins. Co. v. Bottoms, 415 S.E.2d 131, 134 (Va. 1992)) (internal quotation marks omitted). Stated differently, a contract's term is ambiguous if it is susceptible to "more than one reasonable construction." Clinch Valley Physicians, Inc. v. Garcia, 414 S.E.2d 599, 601 (Va. 1992). Such ambiguity may be patent or latent. Va. Elec. & Power, 683 S.E.2d at 526. Patent ambiguity exists when "the language of the contract itself reveals that it can be interpreted in more than one way." Id. Latent ambiguity, although less common than patent ambiguity, arises "where language '[although] appearing perfectly clear at the time the contract[] [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways.'" Id. (second and third alterations in

10

original) (quoting Galloway Corp. v. S.B. Ballard Constr. Co., 464 S.E.2d 349, 355 (Va. 1995)).

Before addressing whether the 3% fee provision is ambiguous, we recognize a number of guiding principles under Virginia law for ascertaining ambiguity in a contract. When determining whether a contract is ambiguous, courts must consider the contract as a whole and not emphasize isolated terms. TM Delmarva Power, 557 S.E.2d at 200. They must ascribe meaning to every word or clause to which a reasonable meaning may be given and not presume the parties "included needless words in the contract." Id. Yet courts must remain careful not to add terms that the parties did not include. Id. Finally, the fact that the parties disagree as to the meaning of a term does not alone render it ambiguous. Id.

The Compensation Clause's 3% fee provision is patently ambiguous. In reaching this conclusion, we begin as we must by examining the language of the disputed provision: "Consultant will be paid 3% of each new contract brought to Swift, which was obtained by Lion." In interpreting this provision, we assume that the "new contract" is a contract to which Swiftships is a party, for that is the only reasonable interpretation of the provision in light of the contract as a whole.

Reading the 3% fee provision literally demonstrates its patent ambiguity. Contracts are, of course, binding agreements

11

formed by offer and acceptance and supported by valuable consideration. Montagna v. Holiday Inns, Inc., 269 S.E.2d 838, 844 (Va. 1980). A literal, plain meaning construction of the 3% fee provision would mean that Lion Associates would have to obtain such an enforceable agreement and bring it to Swiftships, even though for such an agreement to exist Swiftships would already have to be a party to it. We simply fail to understand how Lion Associates can obtain and bring a "new contract" to Swiftships when for such a contract even to exist Swiftships must have already entered into it. This literal, plain meaning interpretation makes little, if any, sense.

A reasonable construction of this provision would entitle Lion Associates to the 3% fee when it obtains an opportunity for Swiftships to enter into a new contract and brings the opportunity to Swiftships. In fact, the parties' competing interpretations both rest on the assumption that the provision applies when Lion Associates obtains an opportunity for Swiftships to enter into a new contract, not that it applies when Lion Associates brings an already formed, enforceable contract to Swiftships. But this construction is also fraught with ambiguity and begs the further question of what Lion Associates must do to obtain a contracting opportunity and bring it to Swiftships. It is unclear whether Lion Associates must initially identify a potential contracting opportunity for

Swiftships, only render assistance that provides Swiftships the opportunity to enter into a new contract that Swiftships would have been otherwise unable to enter into, or both.  Lion Associates and Swiftships offer differing but reasonable interpretations of what the term requires.

Swiftships' interpretation, in essence, is that Lion Associates must initially identify the contracting opportunity and bring it to Swiftships.  That interpretation is consistent with one of Lion Associates' stated obligations in the Purpose Clause to "identify marketing opportunities in U.S. Government and commercial organizations."  According to Swiftships, the Compensation Clause's 3% fee provision therefore applies only to contracting opportunities that Lion Associates initially identifies for Swiftships, not contracting opportunities that Swiftships identifies and Lion Associates only assists in securing.  This interpretation, which the district court adopted, is a reasonable one.

Lion Associates' interpretation, however, is also reasonable.  According to Lion Associates, the disputed provision entitles it to a 3% fee whenever its efforts provide Swiftships the opportunity to enter into a new contract that it would have been unable to enter into without Lion Associates' assistance.  In other words, when Lion Associates' services obtain the ability for Swiftships to enter into a new contract,

13

it is entitled to the 3% fee, regardless of whether it initially discovered the opportunity.  This interpretation coincides with the thrust of the Purpose Clause, which essentially obligates Lion Associates to convince companies and the government to employ Swiftships.

Because the disputed provision is patently ambiguous and open to more than one reasonable interpretation, parol evidence is necessary to ascertain the intention of the parties.  At the district court, both parties marshaled evidence in support of their interpretations, thus creating a genuine issue of material fact as to their intention.  The district court did not consider such evidence, instead granting summary judgment on the basis that the provision was unambiguous in requiring Lion Associates to identify the Iraqi Navy Contract initially and bring it to Swiftships.  We therefore reverse the district court's grant of summary judgment on the breach of contract claim and remand for the trier of fact to determine what the parties intended.

IV.

We next address whether the district court erred in granting summary judgment as to Lion Associates' unjust enrichment claim.  Lion Associates insists that genuine issues of material fact exist as to whether the services that it rendered in connection with the Iraqi Navy Contract fall within

14

the scope of the parties' agreement. According to Lion Associates, because such genuine issues of material fact exist, it was inappropriate for the district court to grant summary judgment as to its alternative claim for unjust enrichment.

Unjust enrichment is an equitable theory of recovery "based upon an implied contract to pay the reasonable value of services rendered." Mongold v. Woods, 677 S.E.2d 288, 292 (Va. 2009). To recover under a theory of unjust enrichment, a plaintiff must prove that (1) "he conferred a benefit on" the defendant, (2) the defendant "knew of the benefit and should reasonably have expected to repay" the plaintiff for it, and (3) the defendant "accepted or retained the benefit without paying for its value." Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 838 (Va. 2008). If the plaintiff makes such a showing, "the court will imply a contract between the parties to prevent inequity." Mongold, 677 S.E.2d at 292.

A cause of action for unjust enrichment is unavailable, however, when an express contract exists that governs payment for the services rendered. See id. As the Supreme Court of Virginia has explained, "when such an express contract exists, . . . there is no need to imply one because the parties have already negotiated an agreement." Id. "The law will not impose an implied contractual relationship upon parties in contravention of an express contract." Nedrich v. Jones, 429

15

S.E.2d 201, 207 (Va. 1993). But this "rule, according to its terms, applies only when there is an express, enforceable contract between the parties covering the services for which quantum meruit recovery is claimed." Mongold, 677 S.E.2d at 292. If an express contract exists but does not cover the services rendered, a cause of action for unjust enrichment remains available. See id.

We agree with the district court that a cause of action for unjust enrichment is unavailable to Lion Associates because an express contract exists that covers the services it rendered in connection with the Iraqi Navy Contract. The Purpose Clause provides that Lion Associates would, among other things, "interfac[e] with the U.S. Government and various national and international companies who are known to have a requirement for [Swiftships'] product and services," "explain [Swiftships'] capabilities," and "represent that [Swiftships] can achieve the objectives established by the appropriate enterprise better than any known competitor." The services that Lion Associates rendered with respect to the Iraqi Navy Contract—interfacing with Navy officers, explaining Swiftships' capabilities, and convincing NAVSEA to award the contract to Swiftships over competitors—fall squarely within the obligations imposed in the express agreement between Lion Associates and Swiftships.

The express agreement provided for compensation to Lion Associates in exchange for these services. As promised in the agreement, Swiftships paid Lion Associates twelve monthly installments of $7,500 in return for its performance of these services. Although a dispute remains about whether the 3% fee provision also applies, it does not change the fact that an express agreement exists that covers the services rendered. Depending on the resolution of the breach of contract dispute, Lion Associates may be entitled to only the monthly $7,500 payments for those services or it may also be entitled to 3% of the Iraqi Navy Contract. Either way, the express agreement governs Lion Associates' compensation for the services it rendered with respect to the Iraqi Navy Contract, making a cause of action for unjust enrichment unavailable.

V.

For these reasons, we affirm the district court's grant of summary judgment as to Lion Associates' unjust enrichment claim but reverse its grant of summary judgment as to the breach of contract claim and remand for further proceedings.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>